**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARACELY MARINELARENA, *Petitioner*, v. WILLIAM P. BARR, Attorney General, *Respondent*. | No. 14-72003 Agency No. A095-731-273 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc September 27, 2018
Pasadena, California

Filed July 18, 2019

Before: Sidney R. Thomas, Chief Judge, and A. Wallace
Tashima, Susan P. Graber, William A. Fletcher, Marsha S.
Berzon, Johnnie B. Rawlinson, Jay S. Bybee, Milan D.
Smith, Jr., Sandra S. Ikuta, Paul J. Watford and Michelle T.
Friedland, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Ikuta

## SUMMARY[*]

### Immigration

Granting Aracely Marinelarena's petition for review, reversing a decision of the Board of Immigration Appeals, and remanding, the en banc court overruled *Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc), and held that, in the context of eligibility for cancellation of removal, a petitioner's state-law conviction does not bar relief where the record is ambiguous as to whether the conviction constitutes a disqualifying predicate offense.

Marinelarena was charged with conspiracy to commit a felony in violation of California Penal Code § 182(a)(1), namely conspiring to sell and transport a controlled substance in violation of California Health and Safety Code § 11352. The complaint listed a number of overt acts in support, only one of which referenced a specific controlled substance, heroin. Upon a guilty plea, Marinelarena was convicted of violating § 182(a)(1).

In removal proceedings, Marinelarena argued that her conviction did not constitute a controlled substance offense that barred cancellation of removal because her record of conviction did not identify that the conviction rested on a specific controlled substance. However, the BIA concluded that Marinelarena had the burden of establishing that her conviction was not a disqualifying offense, and that she had not met that burden.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In determining whether Marinelarena's conviction constituted a predicate offense for immigration purposes, the en banc court applied the three-step process derived from *Taylor v. United States*, 495 U.S. 575 (1990).

First, the en banc court held that the conspiracy statute under which Marinelarena was convicted was not a categorical match to the relevant federal controlled substance offense because a defendant could be convicted under California Penal Code § 182(a)(1) for any criminal conspiracy, whether or not it relates to a controlled substance offense.

Second, the en banc court assumed that § 182(a)(1) is divisible both as to the predicate crime underlying the conspiracy (here, § 11352) and as to the controlled substance element of § 11352, explaining that the issue of divisibility made no difference to the outcome of the case.

Third, the en banc court applied the modified categorical approach, in which the court examines judicially noticeable documents of conviction – known as *Shepard* documents after *Shepard v. United States*, 544 U.S. 13 (2005) – to determine whether a petitioner was "necessarily" convicted of a state crime with the same basic elements as the relevant generic federal crime.  In doing so, the en banc court concluded that Marinelarena's record of conviction was ambiguous because her guilty plea could have rested on an overt act that did not relate to heroin and, therefore, the en banc court could not assume her conviction was predicated on an act involving a federally controlled substance.

In *Young v. Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc), this court previously held that when a record of

conviction is ambiguous after analyzing the *Shepard* documents, a petitioner is ineligible for cancellation because she has not met her burden of showing that she was not convicted of a disqualifying offense. However, the en banc court overruled *Young*, holding that it was incompatible with the Supreme Court's subsequent decision in *Moncrieffe v. Holder*, 569 U.S. 184 (2013). In so concluding, the en banc court explained that *Moncrieffe* held that, if a record of conviction does *not* conclusively establish that a petitioner was convicted of the elements of a generic offense, then she was not convicted of the offense for immigration purposes.

The en banc court also explained that the fact *Moncrieffe* involved the question of whether the petitioner was removable, not whether the petitioner was eligible for cancellation of removal, did not change the analysis, observing that the Supreme Court explicitly explained in *Moncrieffe* that the categorical analysis is the same in both the removal and cancellation of removal contexts. However, the government had argued that *Moncrieffe*'s analysis does not extend to cancellation of removal because the government bears the burden in the removal context, while the petitioner bears the burden in the cancellation of removal context. The en banc court rejected that argument, explaining that the key question here addressed a question of law: What do the uncontested documents in the record establish about the elements of the crime of conviction with the requisite certainty? The en banc court concluded that this legal query required no factual finding and was therefore unaffected by statutory burdens of proof.

The en banc court noted that the predicate factual question that would be relevant to this analysis was whether all relevant and available documents had been produced, but

the en banc court explained that this question implicated a possible burden of production, not the burden of proof. Because the BIA did not address whether all the relevant documents had been produced, the en banc court remanded to the BIA to consider in the first instance the placement and scope of the burden of production for *Shepard* documents as it applies in cancellation of removal.

Finally, because the en banc court panel held that Marinelarena's conviction was not a controlled substance offense barring cancellation of removal, the en banc court concluded it need not reach the issue of the effect of the expungement of Marinelarena's conviction.

Dissenting, Judge Ikuta, joined by Judges Graber and Rawlinson, wrote that the majority confused the relevant legal and factual issues, thereby creating a new rule that, when an alien has a prior conviction under a state statute that includes multiple, alternative versions of the offense, and there is insufficient evidence in the record to prove which of those alternative versions the alien was convicted of, the court must assume as a matter of law that the alien's conviction did not match the federal generic offense. Judge Ikuta wrote that the majority's new rule: (1) finds no support in *Moncrieffe*; (2) is contrary to *Young*, which Judge Ikuta explained was not overruled by *Moncrieffe* because the cases address entirely distinct issues; (3) conflicts with the majority of sister circuits; (4) is contrary to the Immigration & Nationality Act in that the majority's new rule overrides the statute and regulation that put the burden on the alien to establish eligibility for relief; and (5) will encourage aliens to withhold and conceal evidence.

## COUNSEL

Brian P. Goldman (argued), Orrick Herrington & Sutcliffe LLP, San Francisco, California; Benjamin P. Chagnon, Thomas M. Bondy, and Robert M. Loeb, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; Andrew Knapp, Southwestern Law School, Los Angeles, California; for Petitioner.

Tim Ramnitz (argued), Attorney; Patrick J. Glen, Senior Litigation Counsel; John W. Blakeley, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Jayashri Srikantiah and Jennifer Stark, Immigrants' Rights Clinic, Mills Legal Clinic, Stanford Law School, Stanford, California; Andrew Wachtenheim and Manuel Vargas, Immigrant Defense Project, New York, New York; for Amici Curiae Immigrant Defense Project, American Immigration Lawyers Association, Asian Americans Advancing Justice-Asian Law Caucus, Community Legal Services in East Palo Alto, Detention Watch Network, Florence Immigrant and Refugee Rights Project, Heartland Alliance's National Immigrant Justice Center, Immigrant Legal Resource Center, National Immigration Law Center, National Immigration Project of the National Lawyers Guild, Northwest Immigrant Rights Project, Public Counsel, and U.C. Davis Immigration Law Clinic.

Sarah L. Rosenbluth and Christopher G. Clark, Boston, Massachusetts; Philip L. Torrey, Managing Attorney, Harvard Immigration and Refugee Clinical Program, Cambridge, Massachusetts; Jason A Cade, Athens, Georgia; Carrie L. Rosenbaum, San Francisco, California; for Amici Curiae Immigration Law Professors.

---

## OPINION

TASHIMA, Circuit Judge:

We must decide whether, in the context of eligibility for cancellation of removal under 8 U.S.C. § 1229b(b), a record that is ambiguous as to whether a state law conviction constitutes a predicate offense that would bar a petitioner from relief actually does bar relief. We hold that it does not.

Petitioner Aracely Marinelarena ("Marinelarena"), a noncitizen who last entered the United States in 2000, conceded that she was removable, but petitioned for cancellation of removal under 8 U.S.C. § 1229b(b). The immigration judge ("IJ") denied her relief, and the Board of Immigration Appeals ("BIA") affirmed, holding that Marinelarena had failed to demonstrate that her prior conviction was *not* for a disqualifying federal offense and, therefore, had not met her burden of showing that she was eligible for cancellation of removal. Marinelarena petitioned for review of the BIA's final decision. We grant her petition, reverse the BIA's determination, and remand to the agency.

We hold that the statute under which Marinelarena was convicted was overbroad at the time of her conviction. We further hold, overruling our previous decision in *Young v.*

*Holder*, 697 F.3d 976 (9th Cir. 2012) (en banc), that, under *Moncrieffe v. Holder*, 569 U.S. 184 (2013), an ambiguous record of conviction does not demonstrate that a petitioner was convicted of a disqualifying federal offense. We do not reach the issue of whether there is a separate burden of production in the cancellation of removal context and, if so, who bears it, and remand to the BIA to consider this issue in the first instance.

## FACTUAL AND PROCEDURAL BACKGROUND

Marinelarena, a native and citizen of Mexico, first entered the United States in 1992. After living in the United States for a number of years, she returned to Mexico briefly in 1999, but re-entered the United States in 2000 following inspection and admission. Marinelarena has lived in the United States since and has two children who are United States citizens.

In 2000, on a plea of nolo contendere, Marinelarena was convicted of a misdemeanor under California Penal Code § 529 for false personation of another. In 2006, she was charged with one count of conspiracy to commit a felony in violation of California Penal Code § 182(a)(1),[1] namely conspiring to sell and transport a controlled substance in violation of California Health and Safety Code § 11352.[2] The

---

[1] California Penal Code § 182(a)(1) applies when "two or more persons conspire: (1) To commit any crime."

[2] California Health and Safety Code § 11352 provides:

> (a) Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish,

complaint listed a number of overt acts in support, only one of which referenced a specific controlled substance, heroin. Marinelarena pleaded guilty and was convicted of violating California Penal Code § 182(a)(1) on March 26, 2007. She was fined, sentenced to three years of probation, and 136 days in county jail. Following her conviction, Marinelarena filed separate petitions in state court under California Penal Code § 1203.4 to expunge her false personation and conspiracy convictions. In 2009, California courts granted both of Marinelarena's petitions, vacating her § 529 and § 182(a)(1) convictions.

Meanwhile, on March 28, 2007, following her conspiracy conviction, the Department of Homeland Security served Marinelarena with a notice to appear for removal proceedings. The notice charged her with removability as an alien who had remained in the United States longer than permitted, in violation of 8 U.S.C. § 1227(a)(1)(B). Marinelarena conceded removability, but applied for cancellation of removal under 8 U.S.C. § 1229b(b).

---

administer, or give away, or attempts to import into this state or transport (1) any controlled substance specified in subdivision (b), (c), or (e), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years.

At a removal hearing in 2011, the IJ noted that Marinelarena's conspiracy conviction had been expunged under California Penal Code § 1203.4, but stated that such an expungement would not eliminate the conviction for immigration purposes, unless the dismissal had been on constitutional grounds. The IJ continued the hearing, instructing Marinelarena to submit any documents or briefing as to why she remained eligible. Accordingly, she submitted a brief arguing that she remained eligible for cancellation of removal despite her § 182(a)(1) conviction. She argued that, because the conviction documents in the record did not identify that the crime of conviction rested on a specific controlled substance, her conviction did not constitute a controlled substance offense as defined by the Controlled Substances Act ("CSA"), 21 U.S.C. § 802.

The IJ rendered an oral decision in 2012, holding that Marinelarena had failed to demonstrate eligibility for cancellation of removal and ordering her removed to Mexico. The IJ determined that although her conviction under § 529 for false personation had been expunged, that expungement did not disqualify it for immigration purposes and the conviction constituted a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). The IJ also found that, "more importantly," her crime "for conspiracy to distribute heroin"—as the IJ construed the criminal complaint—would also bar her from relief. Consequently, the IJ denied her relief.

On appeal, the BIA also held that Marinelarena had the burden of establishing that her conspiracy conviction was not a disqualifying offense, and that she had not met that burden. The BIA explained that California Health and Safety Code § 11352 is broader than the CSA with respect to the

substances covered, 21 U.S.C. § 802, but divisible, and that Marinelarena had failed to submit any evidence showing that she was *not* convicted of a disqualifying controlled substance offense. Therefore, the BIA ruled, Marinelarena had not established that she was eligible for cancellation of removal. The BIA did not discuss her conviction under California Penal Code § 529, nor did it discuss the expungement of either conviction.

Marinelarena timely petitioned for review. A three-judge panel, in a split decision, denied in part and dismissed in part the petition. *Marinelarena v. Sessions*, 869 F.3d 780, 792 (9th Cir. 2017). We then granted rehearing en banc. *Marinelarena v. Sessions*, 886 F.3d 737 (9th Cir. 2018).[3]

### STANDARD OF REVIEW

We review questions of law de novo. *Coronado v. Holder*, 759 F.3d 977, 982 (9th Cir. 2014).

### DISCUSSION

## I. Conviction for a Controlled Substance Offense

To be eligible for cancellation of removal under 8 U.S.C. § 1229b(b), Marinelarena must meet four requirements,[4]

---

[3] The order granting rehearing en banc effectively vacated the three-judge panel opinion. *Id.* ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit.").

[4] To be eligible for cancellation of removal, a petitioner must show that: (A) she "has been physically present in the United States" for at least ten years; (B) she "has been a person of good moral character during such period"; (C) she "has not been convicted of an offense under section

including, as relevant here, that she has not been convicted of a "controlled substance" offense, 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, the central question on appeal is whether Marinelarena's California-state-law conviction for conspiracy to sell and transport a controlled substance constitutes a controlled substance offense under federal law for the purposes of § 1229b(b).

In order to determine whether a state conviction constitutes a predicate offense for immigration purposes, this court employs the now-familiar three-step process derived from *Taylor v. United States*, 495 U.S. 575 (1990). *See Medina-Lara v. Holder*, 771 F.3d 1106, 1111–12 (9th Cir. 2014). "First, we ask whether the state law is a categorical match with a federal [controlled substance] offense[,] . . . look[ing] only to the 'statutory definitions' of the corresponding offenses." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2017) (en banc) (quoting *Taylor*, 495 U.S. at 600), *cert. denied*, 138 S. Ct. 523 (2017). "If a state law 'proscribes the same amount of or less conduct than' that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match." *Id.* (quoting *United States v. Hernandez*, 769 F.3d 1059, 1062 (9th Cir. 2014) (per curiam)); *see also Descamps v. United States*, 570 U.S. 254, 257 (2013) (holding that a state offense and a federal offense are a categorical match if "the [state] statute's elements are the same as, or narrower than, those of the generic [federal] offense").

---

1182(a)(2), 1227(a)(2), or 1227(a)(3)"; and (D) "removal would result in exceptional and extremely unusual hardship" to her family members who are United States citizens, in this case her two children. 8 U.S.C. § 1229b(b)(1)(A)–(D).

If not—*i.e.*, if the state statute criminalizes a broader range of conduct than does the federal offense—we continue to the second step: asking whether the statute of conviction is "divisible." *Id.* A state offense is "divisible" if it has "'multiple, alternative elements, and so effectively creates several different crimes.'" *Almanza-Arenas v. Lynch*, 815 F.3d 469, 476 (9th Cir. 2016) (en banc) (quoting *Descamps*, 570 U.S. at 264). "Alternatively, if [the offense] has a 'single, indivisible set of elements' with different means of committing one crime, then it is indivisible and we end our inquiry, concluding that there is no categorical match." *Id.* at 476–77 (quoting *Descamps*, 570 U.S. at 265).

If the statute is both overbroad and divisible, we continue to the third step and apply the "modified categorical approach." *Martinez-Lopez*, 864 F.3d at 1039. "At this step, we examine judicially noticeable documents of conviction 'to determine which statutory phrase was the basis for the conviction.'" *Id.* (quoting *Descamps*, 570 U.S. at 263). When doing so, we can consider only a restricted set of materials, including "the charging document, the terms of a plea agreement," the "transcript of [the plea] colloquy," and "comparable judicial record[s]." *Shepard v. United States*, 544 U.S. 13, 26 (2005) (plurality opinion); *see also Lopez-Valencia v. Lynch*, 798 F.3d 863, 868 (9th Cir. 2015). In examining these documents, our focus is on whether petitioner was "necessarily" convicted of a state-law crime with the same "basic elements" as the generic federal crime, not on the underlying facts of the conviction. *Descamps*, 570 U.S. at 260–61, 263.

We agree with Marinelarena that California Penal Code § 182(a)(1) is overbroad, and we assume for purposes of this

appeal that it is divisible. Therefore, we apply the modified categorical approach.

## A.  Categorical Approach

First, we consider whether Marinelarena's conspiracy conviction is a categorical match to the relevant generic federal offense. California Penal Code § 182(a)(1) punishes a broader range of conduct than either 8 U.S.C. § 1182(a)(2)(A)(i)(II) or § 1227(a)(2)(B)(I). A defendant could be convicted under § 182(a)(1) for any criminal conspiracy, whether or not it relates to a controlled substance. A conviction under § 182(a)(1), therefore, cannot count as a controlled substance offense under the categorical approach. *See, e.g.*, *United States v. Trent*, 767 F.3d 1046, 1052 (10th Cir. 2014) (holding that a conspiracy conviction under Okla. Stat. Ann. tit. 21, § 421(A)—a statute textually similar to California Penal Code § 182(a)(1)—is not a serious drug offense under the categorical approach because "the statute could be violated in many ways that have nothing to do with drugs"), *abrogated on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016).

## B.  Divisibility

Having determined that § 182(a)(1) is not a categorical match, we normally next turn to the question of divisibility. However, for our purposes, it is sufficient to assume that § 182(a)(1) is divisible both as to the predicate crime underlying the conspiracy (here, § 11352) and as to the controlled substance element of § 11352, for, as explained below, it would make no difference in the outcome of this case if it were not.

## C.  Modified Categorical Approach

### *1.  Analyzing the* Shepard *Documents*

We proceed to step three, the modified categorical approach, and "examine judicially noticeable documents of conviction" to determine the basis for petitioner's conviction. *Martinez-Lopez*, 864 F.3d at 1039.  Here, the only judicially noticeable document in the record relating to Marinelarena's criminal offense is the criminal complaint, which identifies the target offense of the conspiracy as selling and transporting a controlled substance in violation of California Health and Safety Code § 11352.  The complaint identifies sixteen overt acts, only one of which references a specific controlled substance, heroin.  But a complaint alone is insufficient to prove a conviction related to a particular controlled substance, s*ee Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1152 (9th Cir. 2003) (noting that where a defendant enters a guilty plea, "charging papers alone are never sufficient" to establish the elements of conviction (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002))), and the record contains no plea agreement, plea colloquy, or judgment to establish the elements on which Marinelarena's conviction under § 182(a)(1) rested.

Therefore, even though heroin is a controlled substance under federal law, *see* 21 U.S.C. § 802(6) (defining "controlled substance" by reference to statutory schedules, including Schedule I); 21 U.S.C. § 812, Schedule I (b)(10) (listing heroin on Schedule I), the record is inconclusive as to whether Marinelarena's plea included the sole heroin allegation in the complaint, which was not necessary to conviction for the conspiracy offense.  Because Marinelarena's guilty plea could have rested on an overt act

that did not relate to heroin, we cannot assume her conviction was predicated on an act involving a federal controlled substance. Thus, the record of her conviction is ambiguous as to whether Marinelarena's conviction related to a federal controlled substance.

Here, the BIA found that, considering the complaint, Marinelarena had failed to carry her burden of establishing that she was not convicted of a disqualifying controlled substance offense. Previously, we had held that when the record of conviction is ambiguous after analyzing the *Shepard* documents, a petitioner is ineligible for cancellation of removal because she has not met her burden of showing that she was not convicted of a disqualifying federal offense.[5] *See Young*, 697 F.3d at 990. Subsequent Supreme Court decisions, however, have brought into question the foundation of this conclusion. *See Moncrieffe v. Holder*, 569 U.S. 184, 189–90 (2013); *Descamps*, 570 U.S. at 263–64. We therefore granted rehearing en banc to reconsider our earlier decision.

### 2. *Ambiguous Record of Conviction*

In *Young*, we held en banc that a petitioner cannot establish her eligibility for cancellation of removal by showing that the record of conviction is inconclusive as to whether she was convicted of a disqualifying offense. 697 F.3d at 988–89. Thus, under *Young*, Marinelarena must prove that she was *not* convicted of a controlled substance

---

[5] This presumption, that the burden rested on the petitioner, may be why the BIA did not inquire as to whether other *Shepard* documents were available to clarify Marinelarena's record of conviction.

offense in order to establish her eligibility for cancellation of removal.

Marinelarena contends, however, that *Young* is incompatible with the Supreme Court's subsequent decision in *Moncrieffe*. We agree, and so hold. Under *Moncrieffe*, ambiguity in the record as to a petitioner's offense of conviction means that the petitioner has *not* been convicted of an offense disqualifying her from relief.[6]

---

[6] The Circuits are split on this issue. The First Circuit reached the same conclusion as we do in *Sauceda v. Lynch*, 819 F.3d 526, 533–34 (1st Cir. 2016), holding that *Moncrieffe* dictates that an ambiguous record of conviction does *not* demonstrate a disqualifying offense in both the removal and cancellation of removal contexts. The Second Circuit has reached a similar conclusion, though prior to *Moncrieffe*. *See Martinez v. Mukasey*, 551 F.3d 113, 122 (2d Cir. 2008) (holding that the BIA "erred by placing the burden on [the petitioner] to show that his conduct was the equivalent of a federal misdemeanor").

The Tenth, Sixth, and Eighth Circuits, however, reached the opposite conclusion, holding that *Moncrieffe* does not extend to cancellation of removal. *See Lucio-Rayos v. Sessions*, 875 F.3d 573, 582 (10th Cir. 2017), *cert. denied sub nom. Lucio-Rayos v. Whitaker*, 139 S. Ct. 865 (2019); *Gutierrez v. Sessions*, 887 F.3d 770, 776 (6th Cir. 2018), *cert. denied sub nom. Gutierrez v. Whitaker*, 139 S. Ct. 863 (2019); *Pereida v. Barr*, 916 F.3d 1128, 1132–33 (8th Cir. 2019). But the Tenth Circuit's decision relied heavily on our panel majority opinion in *Marinelarena*, which has now been effectively vacated, *see* footnote 3, *supra*, and the Sixth Circuit's rested on the same reasoning, *see Lucio-Rayos*, 875 F.3d at 582–83; *Gutierrez*, 887 F.3d at 776–77. The Eighth Circuit's decision, considered the question in a single paragraph, citing to the Tenth Circuit's decision in *Lucio-Reyes* as support and without any consideration of the potential effect of *Moncrieffe. See Pereida*, 916 F.3d at 1133. We decline to follow the Tenth, Sixth, and Eighth Circuits for the reasons discussed *infra*.

In *Moncrieffe*, the Supreme Court explained the framework for applying the categorical approach to determine whether a noncitizen has committed an aggravated felony, as defined by the Immigration and Nationality Act ("INA"). 569 U.S. at 191. In cases applying the categorical approach, courts compare the elements of a noncitizen's offense of conviction to those of a generic federal offense that would disqualify her from relief. *See Descamps*, 570 U.S. at 260. The Court in *Moncrieffe* reiterated that, under the categorical approach, courts should "look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe*, 569 U.S. at 190 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense '"*necessarily*" involved . . . facts equating to [the] generic [federal offense].'" *Id.* (alterations in original) (emphasis added) (quoting *Shepard*, 544 U.S. at 24). "Whether the noncitizen's actual conduct involved such facts 'is quite irrelevant.'" *Id.* (quoting *United States ex rel. Guarino v. Uhl*, 107 F.2d 399, 400 (2d Cir. 1939)).

The Court in *Moncrieffe* further stated that, if a statute contains multiple, alternative versions of a crime (that is, if

---

The Seventh Circuit has nodded toward the issue in dicta, but has not squarely addressed it, *see Sanchez v. Holder*, 757 F.3d 712, 720 n.6 (7th Cir. 2014), and the question remains open in the Fifth Circuit. *See Le v. Lynch*, 819 F.3d 98, 107 n.5 (5th Cir. 2016) (expressly reserving the question); *Gomez-Perez v. Lynch*, 829 F.3d 323, 326 n.1 (5th Cir. 2016) (noting the question remains open). Similarly, the Eleventh Circuit has not reached a conclusion on this issue. *See Francisco v. U.S. Attorney Gen.*, 884 F.3d 1120, 1134 n.37 (11th Cir. 2018).

the statute is divisible), "a court may determine which *particular* offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or "'some comparable judicial record" of the factual basis for the plea.'" *Id.* at 191 (emphasis added) (quoting *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009)). The Court labeled this inquiry *as a whole* the "categorical approach," as opposed to distinguishing between the categorical and modified categorical approaches. *Id.* at 192.

Most important for this case is the Court's response in *Moncrieffe* to the government's argument that the petitioner had committed a "felony punishable under the [CSA]," which qualifies as an aggravated felony that would allow the petitioner to be deported. *Id.* at 188. The Court disagreed with that argument. *Id.* at 190. The record established that Moncrieffe had been convicted under a state statute proscribing conduct that constitutes an offense under the CSA, but the record was ambiguous as to whether the CSA would "'necessarily' prescribe *felony* punishment for that conduct." *Id.* at 192 (emphasis added). The Court held that "[a]mbiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA." *Id.* at 194–95. "Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony" allowing him to be deported. *Id.* at 195.

This mode of analysis is clearly irreconcilable with *Young*. *Young* holds that ambiguity in the record as to which elements underlay the petitioner's conviction means that, for purposes of cancellation of removal, she has failed to prove that she was not convicted of the disqualifying offense

contained in a divisible statute.    697 F.3d at 988–89.
*Moncrieffe* holds the opposite:    If the record does *not*
conclusively establish that the noncitizen was convicted of
the elements of the generic offense, then she was *not*
convicted of the offense for purposes of the immigration
statutes.  569 U.S. at 194–95.

That *Moncrieffe* involved the question of whether the
petitioner was *removable*, not whether the petitioner was
eligible for *cancellation* of removal, does not change our
analysis.    The Supreme Court explicitly explained in
*Moncrieffe* that the categorical "*analysis is the same* in both
[the removal and cancellation of removal] contexts."  *Id.* at
191 n.4 (emphasis added).  Moreover, any such distinction
would have led to an exceedingly odd result in *Moncrieffe*
itself—Moncrieffe would have been not removable as an
aggravated felon, as the Court held, yet, based on the same
conviction, would be ineligible for asylum or cancellation of
removal, also alluded to in the opinion.  *Id.* at 187.
Therefore, the question in both contexts is whether the
conviction "necessarily" involved elements that correspond
to a federal offense.  *Id.* at 194.[7]

The government argues that, despite the Supreme Court's
statement to the contrary, *Moncrieffe*'s analysis does not
extend to the cancellation of removal context because the
statutory burdens of proof differ.  In the removal context, the

---

[7] As the First Circuit explained in *Sauceda*, "[t]his conclusion follows
from the fact that the underlying statutory language is the same in both"
the removability and cancellation of removability contexts.  819 F.3d at
534.  Thus, "'[c]onviction' is 'the relevant statutory hook,'" and has a
"formal, legal definition governed by the presumption explained [in
*Moncrieffe*]."  *Id.* (quoting *Moncrieffe*, 569 U.S. at 191).

government bears the burden of "establishing by clear and convincing evidence" that a noncitizen is deportable, 8 U.S.C. § 1229a(c)(3)(A). But, the government argues, the petitioner bears the burden of demonstrating that she is eligible for cancellation of removal under 8 U.S.C. § 1229a(c)(4). While this may be true, that distinction has no bearing on the conclusion reached in *Moncrieffe*, because the key question in the categorical approach—like the modified categorical approach—addresses a question of law: What do the uncontested documents in the record establish about the elements of the crime of conviction with the requisite certainty? That legal query requires no factual finding and is therefore unaffected by statutory "burdens of proof."

An analysis of *Moncrieffe* and subsequent Supreme Court cases demonstrates that the categorical approach, and by extension the modified categorical approach, poses a fundamentally legal question. The categorical approach involves an "abstract" inquiry, focused on whether a petitioner was "necessarily" convicted of a disqualifying offense. *Moncrieffe*, 569 U.S. at 190–91. The Supreme Court has repeatedly explained that Congress intended to limit the assessment "'to a legal analysis of the statutory offense,' and to disallow '[examination] of the facts underlying the crime.'" *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015) (alteration in original) (quoting Alina Das, *The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law*, 86 N.Y.U. L. Rev. 1669, 1688, 1690 (2011)). Thus, when applying the categorical approach, "[a]n alien's actual conduct is irrelevant to the inquiry," because we must "'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." *Id.* (quoting *Moncrieffe*, 569 U.S. at 190–91). Hence, the categorical

approach mandates a legal inquiry, not a determination of a question of fact to which the burden of proof concept applies.

The same reasoning pertains to the modified categorical approach. The modified categorical approach is merely a "version of [the categorical] approach," *Mellouli*, 135 S. Ct. at 1986 n.4, that "serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 570 U.S. at 260. Thus, using the modified categorical approach, "a court may determine which particular offense the noncitizen was convicted of by examining" certain *Shepard* documents; "[o]ff limits to the adjudicator, however, *is any inquiry into the particular facts of the case*." *Mellouli*, 135 S. Ct. at 1986 n.4 (emphasis added); *see also Descamps*, 570 U.S. at 278 ("The modified approach does not authorize a sentencing court to substitute such a facts-based inquiry for an elements-based one.").

As a result, whether the record of conviction necessarily established the elements of the disqualifying federal offense "is a legal question with a yes or no answer." *Almanza-Arenas*, 815 F.3d at 489 (Watford, J., concurring). And, as a pure question of law, it is unaffected by statutory burdens of proof. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring) ("[T]he evidentiary standard of proof applies to questions of fact and not to questions of law.").

The dissent contends that the *Shepard* inquiry is "factual" in nature followed by a separate legal inquiry: "[i]f the court can determine the version of the offense, the court then proceeds to the legal inquiry." Dissent Op. 43, 44. But the

Supreme Court has been clear that the *Shepard* inquiry is not an "evidence-based one;" instead, determining the version of the offense—the "elements-based inquiry"—is the legal inquiry. *Descamps*, 570 U.S. at 266–67.

To the extent that there may be a predicate factual question, it would be whether all relevant and available documents have been produced. But this question implicates a possible burden of *production*, which we need not and do not address here, not the burden of proof. Once all relevant and available *Shepard* documents have been produced, nothing remains inconclusive—the documents either show that the petitioner was convicted of a disqualifying offense under the categorical approach, or they do not. What the documents show is thus a purely legal question, to which the burden of proof is irrelevant.

This conclusion does not in any respect "entirely negate" the statutory burden of proof nor does it "presuppose eligibility," as the government argues. A petitioner still bears the burden of proof for all factual inquiries; under 8 U.S.C. § 1229a(c)(4), Marinelarena still bears the burden of showing that she has been physically present in the United States for ten or more continuous years, has been a person of good moral character, and that her citizen children would suffer "exceptional and extremely unusual hardship" on her removal, as those are questions of fact. 8 U.S.C. § 1229b(b)(1); *see also Moncrieffe*, 569 U.S. at 204 ("[H]aving been found not to be an aggravated felon, the noncitizen may seek relief from removal such as asylum or cancellation of removal, assuming he satisfies the *other* eligibility criteria." (emphasis added)). In short, because the categorical and modified categorical approaches "answer[] the purely 'legal question of what a conviction *necessarily*

established,'" the burden of proof "does not come into play." *Sauceda*, 819 F.3d at 534 (quoting *Mellouli*, 135 S. Ct. at 1987).

The government and dissent both contend, however, that *Moncrieffe*'s analysis is limited to the categorical approach and therefore has no bearing on the application of the modified categorical approach in this case. *See* Dissent Op. 48. But this argument also fails. The purported distinction overstates the difference between the categorical and modified categorical approaches. As the Supreme Court has noted, the modified categorical approach is "*a tool for implementing the categorical approach*" that allows a court "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 262 (emphasis added).

Accordingly, the dissent's protestations that *Moncrieffe* is irrelevant to this case because *Moncrieffe* involved only the categorical approach, Dissent Op. 48–50, fall flat; as *Descamps*, *Mellouli*, and *Moncrieffe* itself demonstrate, the modified categorical approach is part and parcel of the categorical approach. To attempt to clinically separate any discussion of the two phases as unrelated ignores that the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's." *Descamps*, 570 U.S. at 263. The categorical approach is merely the "mechanism for making that comparison." *Id.*

Thus, in *Moncrieffe*, the Court outlined *both* what we have called the "categorical" step of the analysis *and* the "modified categorical" step of the analysis, and then labeled the inquiry *as a whole* "the categorical approach." *Moncrieffe*, 569 U.S. at 191–92 (outlining the categorical and modified categorical analysis and stating that "[t]his categorical approach has a long pedigree in our Nation's immigration law"). That is because the relevant inquiry in both categorical and modified categorical cases is the same: A court must compare the elements of the offense of which the noncitizen was convicted to the elements of a generic federal offense disqualifying her from relief, and then determine what facts are *necessarily* established by that conviction. The only difference between the two approaches is that, in modified categorical cases, a statute lists "multiple, alternative versions of [a] crime," *Descamps*, 570 U.S. at 262, so the court must look to the record of conviction to determine "which particular offense the noncitizen was convicted of." *Moncrieffe*, 569 U.S. at 191. Once that determination is made, the relevant question is the same as that in categorical cases: A court must ask what the noncitizen's conviction *necessarily* involved, "not what acts [the noncitizen] committed." *Id.*[8]

---

[8] The dissent argues that we are misreading the paragraph in *Moncrieffe* from which this quote, and several other relevant quotes, originate. Dissent Op. 50–52. The relevant paragraph reads:

> This categorical approach has a long pedigree in our Nation's immigration law. See Das, *The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law*, 86 N.Y.U. L. Rev. 1669, 1688–1702, 1749–1752 (2011) (tracing judicial decisions back to 1913). The reason is that the INA asks what offense the noncitizen was "convicted" of, 8 U.S.C. § 1227(a)(2)(A)(iii), not what acts he

committed. "[C]onviction" is "the relevant statutory
hook." *Carachuri-Rosendo v. Holder*, 560 U.S. —, —,
130 S. Ct. 2577, 2588, 177 L.Ed.2d 68 (2010); *see
United States ex rel. Mylius v. Uhl*, 210 F. 860, 862
(C.A.2 1914).

569 U.S. at 191. The dissent reads this paragraph as merely explaining
that the categorical approach applies in the immigration context. Dissent
Op. 51. The dissent is correct that this section makes clear that the
categorical approach applies in the immigration context; the first sentence
says as much. *Moncrieffe*, 569 U.S. at 191. But the debate in *Moncrieffe*
was not over *whether* the categorical approach applied in the immigration
context, but rather over *how* it is to be applied. *See, e.g.*, *id.* at 195
(explaining the government's argument that only the elements of the
offense, and not related sentencing factors, are considered in the
categorical approach). In light of that, the rest of the paragraph and the
citations therein serve to elucidate the precedent and rationales the Court
uses to define the contours of that application.

The first law review article cited itself describes the "century of
precedent that fleshes out the contours and rationales for [the categorical]
approach." Das, *The Immigration Penalties of Criminal Convictions:
Resurrecting Categorical Analysis in Immigration Law*, 86 N.Y.U. L. Rev.
1669, 1689 (2011). In particular, the section cited to by the Court focuses
on the cases' uniform refusal to consider underlying facts of conviction
and their acceptance of an abstract, elements-based inquiry. *See, e.g.*, *id.*
at 1694 (describing a Second Circuit case in which the court noted that
immigration officials could examine a record of conviction "only to
determine 'the specific criminal charge of which the alien is found guilty
and for which he is sentenced.' In other words, '[i]f an indictment
contains several counts, one charging a crime involving moral turpitude
and others not, the record of conviction would, of course, have to show
conviction and sentence on the first count to justify deportation'"
(alteration in original) (footnote omitted) (quoting *United States ex rel.
Zaffarano v. Corsi*, 63 F.2d 757, 759 (2d Cir. 1933))). As this discussion
shows, throughout its long history the categorical approach has been
considered a legal, elements-based approach.

In *Mathis*, the Supreme Court reaffirmed that the categorical and modified categorical approaches are two aspects of the same analysis. The Court stated that, "when a statute sets out a single (or 'indivisible') set of elements to define a single crime," a court should "line[] up that crime's elements alongside those of the generic offense and see[] if they match." 136 S. Ct. at 2248. "Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." *Id.* at 2249. Cases involving such statutes apply the modified categorical approach. Under this approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* "The court can then compare that crime, *as the categorical approach commands*, with the relevant generic offense." *Id.* (emphasis added). The Supreme Court has similarly disregarded a distinction

---

This conclusion is buoyed by the fact that *Carachuri-Rosendo*, to which the Court also cites in the paragraph, rejected broadening the categorical approach to include a "hypothetical approach" wherein "all 'conduct punishable as a felony' [would be treated] as the equivalent of a 'conviction' of a felony" for immigration purposes. *Carachuri-Rosendo*, 560 U.S. at 575. And the final citation in the paragraph is to a 1914 case, *United States ex rel. Mylius v. Uhl*, where the court queried, "[d]oes the publication of a defamatory libel necessarily involve moral turpitude?" and answered, "[i]t is not enough that the evidence shows that the immigrant has committed such a crime, the record must show that he was convicted of the crime." 210 F. 860, 862 (2d Cir. 1914).

Still, the dissent argues that this context is irrelevant, because it "sheds no light on the question relevant here: who bears the burden of proving what the petitioner was convicted of." Dissent Op. 51–52 n.16. But what this context illuminates is the fact that it is the burden of proof that is irrelevant, because the categorical approach is and has been a fundamentally abstract, legal inquiry.

between the two approaches in other cases. *See Taylor*, 495 U.S. at 600–02 (referring to both methods as the "categorical approach"); *Duenas-Alvarez*, 549 U.S. at 187 (same, but noting that "some courts refer to this step of the *Taylor* inquiry as a 'modified categorical approach'").

In other words, whether a case applies what we have called the "categorical" or the "modified categorical" approach, the "analysis is the same." *Moncrieffe*, 569 U.S. at 191 n.4[9]:    The court asks whether the noncitizen was

---

**[9]** The dissent also attempts to dismiss footnote 4 from the aforementioned *Moncrieffe* paragraph, *see Moncrieffe*, 569 U.S. at 191 n.4 (explaining that the "analysis is the same in both [the removal and cancellation of removal] contexts"), as explaining merely that the categorical approach applies the same way in both the cancellation and removal contexts. Dissent Op. 52. We do not disagree with the dissent on this point; the categorical approach does apply the same way in the removal and cancellation of removal contexts—in both cases, the court looks to whether the petitioner was "necessarily" convicted of a disqualifying federal offense. *Moncrieffe*, 569 U.S. at 194. That is why *Carachuri-Rosendo*'s rationale translates seamlessly to *Moncrieffe*. *See* Dissent Op. 52–54; *Moncrieffe*, 569 U.S. at 191, 195, 196, 197, 198, 199, 200, 201, 204, 205, 206 (citing to *Carachuri-Rosendo* when explaining why the court must reject the government's attempt to inject a "hypothetical" element into the categorical approach). Where we part ways with the dissent is in our view that the categorical approach encompasses the modified categorical approach.

In the same vein, the dissent rightly notes that *Moncrieffe* did not cite *Carachuri-Rosendo* to make a point about the burden of proof in immigration cases. Dissent Op. 53. But that is because the burden of proof does not affect the application of the categorical, and by extension modified categorical, approach. There was no point to make. The question in *Moncrieffe*, the question in *Carachuri-Rosendo*, and the question here is whether the noncitizen has necessarily been "*convicted* of any aggravated felony." Dissent Op. 52. The burden of proof is irrelevant; if the statute is indivisible, or the *Shepard* documents

*necessarily* convicted of an offense disqualifying her from relief. If the record of conviction is ambiguous on this point then her "conviction did not '*necessarily*' involve facts that correspond to" a disqualifying offense. *Moncrieffe*, 569 U.S. at 194–95 (emphasis added). Thus, under the modified categorical approach, it was error for the BIA to deem Marinelarena ineligible to apply for cancellation because her record of conviction is ambiguous.[10]

---

ambiguous, the noncitizen has not necessarily been convicted of a disqualifying offense. *Moncrieffe*, 569 U.S. at 197–98.

[10] The dissent argues that our ruling will incentivize petitioners to conceal their convictions. Dissent Op. 32, 56. This is a red herring and any danger is vastly overblown. In practice, the government always investigates and determines whether a noncitizen has convictions that may be grounds for removal or bars to relief. *See, e.g.*, 8 C.F.R. § 1003.47(c), (d) (requiring noncitizens to file identifying documentation and provide biometrics); *id.* § 1003.47(e) (requiring DHS to "initiate all relevant identity, law enforcement, or security investigations or examinations concerning the alien or beneficiaries promptly . . . . and to advise the immigration judge of the results in a timely manner"). The only relevant documents—*Shepard* documents—are public records, which a private citizen or noncitizen could not possibly destroy. And they would be nearly impossible for a noncitizen to conceal. And assuming the documents exist, the government is well, and better, placed to obtain them. See Immigrant Defense Project Amicus Br. at 18–24. The likelihood that a petitioner would obtain relief because the government cannot locate an existing document because the petitioner actively conceals it is therefore so low as to be nonexistent.

But more importantly, even if a noncitizen is not barred from relief because of a disqualifying conviction, the decision whether to then grant the noncitizen relief is still discretionary. Obfuscation or concealment by a noncitizen could and likely would be considered by an IJ to be grounds to deny that discretionary relief. *See Moncrieffe*, 569 U.S. at 204. Noncitizens therefore have an overarching incentive to comply with the government's procedures.

The BIA did not address, however, the question of whether all the relevant *Shepard* documents had been produced.    Neither the government nor Marinelarena provided the plea agreement or plea colloquy.  Because this appeal was focused on whether, when *Shepard* documents are inconclusive, an ambiguous record necessarily qualifies as a federal offense, not whether Marinelarena or the government failed to produce all required Shepard documents, we do not reach the issue of which party bears the burden of production nor the issue of when that burden is satisfied.  We thus remand to the BIA to consider in the first instance the placement and scope of the burden of production for *Shepard* documents as it applies in cancellation of removal.[11]  *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (holding that, where the BIA has not yet considered an issue, courts should remand to allow the BIA to consider the issue in the first instance).

---

[11] The dissent argues that we err in remanding to the BIA because, the dissent contends, the law is clear that the burden of production is on the petitioner.  *See* Dissent Op. 36–37, 37 n.4.  Although we express no opinion as to the applicable burden of production, the question or answer as to which party bears it is not as cut-and-dried as the dissent suggests. *See* 8 C.F.R. § 1240.8(d) ("*If the evidence indicates* that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." (emphasis added)).  *Compare* Pet. Suppl. En Banc Br. at 22–26 (arguing the burden of production is not on the petitioner), *with* Resp. Suppl. En Banc Br. at 15–20 (arguing the reverse).    Moreover, as the discussion in footnote 10, *supra*, of the carefully laid out procedures in 8 C.F.R. § 1003.47 indicates, the government appears to be well positioned to address this burden.  In any event, the government counsels us that "[t]his argument was never presented to the agency, however, and thus is not properly before the court," Resp. Suppl. En Banc Br. at 15, and we agree.

## II. Expungement

Because we hold that on the present record Marinelarena's conviction is not a controlled substance offense that would bar her from cancellation of removal, we need not and do not reach the issue of expungement.

### CONCLUSION

The record of Marinelarena's conviction is ambiguous as to whether she was convicted of conspiring to sell and transport a controlled substance as defined under federal law. Therefore, because the record of conviction did not show that Marinelarena's state-law conviction was "necessarily" for an offense corresponding to a federal controlled substance offense, she is not barred from relief under 8 U.S.C. § 1229b(b).

•   ●   •

Accordingly, the petition for review is **GRANTED**, the BIA's decision is **REVERSED**, and the matter is **REMANDED** to the agency for further proceedings consistent with this opinion.

IKUTA, Circuit Judge, with whom GRABER and RAWLINSON, Circuit Judges, join, dissenting:

The majority today creates a new rule that, when an alien has a prior conviction under a state statute that includes "multiple, alternative versions of the crime," *Descamps v. United States*, 570 U.S. 254, 262 (2013), and there is insufficient evidence in the record to prove which of those alternative versions the alien was convicted of, we must assume as a matter of law that the alien's conviction does not disqualify the alien from receiving immigration relief. Because this new rule is invented out of whole cloth, will give aliens a perverse incentive to withhold and conceal evidence, and is contrary to the Immigration and Naturalization Act (INA) and Supreme Court decisions, I dissent.

I

The Department of Homeland Security (DHS) determined that Aracely Marinelarena was removable as an alien who had remained in the United States longer than permitted, in violation of 8 U.S.C. § 1227(a)(1)(B). Therefore, the DHS initiated removal proceedings by issuing a Notice to Appear. Marinelarena conceded that she is removable. She then sought relief from removal by submitting an application for cancellation of removal.

In her application for cancellation of removal, Marinelarena stated: "Convicted 12/28/2006, Charges, Conspiracy to commit a crime, sale, transportation or offer to sell controlled substances, Sentence, three months in a State

prison. This sentence is subject to a Motion."[1] Marinelarena also submitted a two-count criminal complaint filed against her in 2006. Count 1 charged her with conspiracy to sell and transport a controlled substance, in violation of California Penal Code section 182(a)(1) (Conspiracy) and California Health and Safety Code section 11352 (Offense Involving Controlled Substances Formerly Classified as Narcotics). In connection with this conspiracy charge, the indictment alleged sixteen overt acts, one of which referred to transportation of three bags containing heroin. Count 2 charged her with the sale, transport, or offer to sell a controlled substance (heroin), in violation of California Health and Safety Code section 11352. Marinelarena also submitted documents filed with the state trial court in support of her motion for dismissal under California Penal Code section 1203.4, including an affidavit in which she declared that she pleaded guilty only to Count 1.

Over the next two years, Marinelarena appeared with counsel before the immigration judge (IJ) at four different hearings. At the first hearing in 2009, Marinelarena's counsel acknowledged that Marinelarena had a conviction relating to transportation of narcotic substances. Given the government's contention that such a conviction would disqualify Marinelarena from cancellation of removal, the IJ asked Marinelarena's counsel for further information and briefing on the issue. At a 2011 hearing, the IJ reiterated his

---

[1] The "motion" referred to in the application is a motion filed under section 1203.4 of the California Penal Code to dismiss Marinelarena's conspiracy conviction. Although her state conviction was dismissed under section 1203.4 on April 15, 2009, this dismissal has no effect on removability. *See Reyes v. Lynch*, 834 F.3d 1104, 1107–08 (9th Cir. 2016) (holding that a "conviction" under the INA includes state convictions that have been expunged on rehabilitative grounds).

request for briefing and documentation regarding the conviction.

At the final hearing in 2012, Marinelarena's counsel acknowledged that she still could not produce additional documentation regarding Marinelarena's conviction for conspiracy to distribute narcotics. The IJ pretermitted Marinelarena's application for cancellation of removal, but informed her counsel that if Marinelarena could obtain evidence that the conviction was not a controlled substance violation, she could move to reopen the proceedings and submit that evidence.

In his oral ruling, the IJ held that because Marinelarena had failed to produce documents showing that her state conviction was not for a disqualifying controlled substance offense, she failed to prove that she was eligible for cancellation of removal. Among other reasons, the IJ held that a conviction for conspiracy to distribute heroin made her ineligible for cancellation pursuant to § 1227(a)(2)(B).

On appeal to the Board of Immigration Appeals (BIA), Marinelarena argued that the IJ erred in determining that her prior state conviction was for a disqualifying offense. The BIA affirmed. It stated that Marinelarena had the burden of establishing eligibility for cancellation of removal. According to the BIA, Marinelarena conceded that she had been convicted of conspiracy to violate section 11352 of the California Health and Safety Code and at least some ways of committing that offense were disqualifying controlled substance offenses. Marinelarena had the burden of proving she had not been convicted of a disqualifying controlled substance offense, and had not carried that burden because she "had not submitted any evidence establishing that her

conspiracy conviction was not for a disqualifying controlled substance offense." Therefore, the BIA held, Marinelarena was not eligible for cancellation of removal.

## II

Congress decreed that "[a]n alien applying for relief or protection from removal has the burden of proof." 8 U.S.C. § 1229a(c)(4)(A); *see also* 8 C.F.R. § 1240.8(d) (providing that the alien "shall have the burden of establishing that he or she is eligible for any requested benefit or privilege").[2] To demonstrate eligibility for cancellation of removal (the benefit that Marinelarena seeks) the alien must show that the alien "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). And if the evidence suggests that a ground "for mandatory denial of the application for relief *may* apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do *not* apply." 8 C.F.R. § 1240.8(d) (emphases added); *cf. Nguyen v. Sessions*, 901 F.3d 1093, 1096 (9th Cir. 2018) ("[W]hen a noncitizen is placed in removal proceedings, the burden of proof shifts depending on whether he is subject to inadmissibility or removability. An 'applicant for admission'

---

[2] Congress has taken great care in allocating the burden of proof in various immigration contexts. For instance, Congress provided in 8 U.S.C. § 1229a(c)(2) that "the alien has the burden of establishing" *either* (a) entitlement to admission "clearly and beyond doubt" *and* the absence of a reason for inadmissibility *or* (b) "by clear and convincing evidence," lawful presence in the United States pursuant to an earlier admission. Under 8 U.S.C. § 1229a(c)(3)(A), by contrast, the government "has the burden of establishing by clear and convincing evidence" the deportability of an alien who has been lawfully admitted to the United States.

bears the burden of proving he is not inadmissible under 8 U.S.C. § 1182 . . . .").

The alien's burden of proof incorporates the burden of persuasion. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005) (holding that this is the default rule); *cf.* 8 U.S.C. § 1229a(c)(4)(B) (in considering an application for relief from removal, an immigration judge will determine, among other things, whether the testimony is persuasive, and sufficient to demonstrate that the alien has satisfied the alien's burden of proof). The burden of persuasion determines which party loses if the record is inconclusive. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198–200 (2014); *see also Overman v. Loesser*, 205 F.2d 521, 523 (9th Cir. 1953) (holding that the party who bears the burden runs "the risk of non-persuasion"). As the Supreme Court has expressed it, "if the evidence is evenly balanced, the party that bears the burden of persuasion must lose." *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 272 (1994).

The alien's burden of proof also incorporates the burden of production. In order to show eligibility for relief under the INA, "[t]he applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form." 8 U.S.C. § 1229a(c)(4)(B). An alien applying for cancellation of removal must complete Form EOIR-42B, which requires the applicant to answer the questions within the form "fully and accurately," including answering whether the alien has been "convicted . . . for an

act involving a felony." EOIR-42B.**³**  If the alien answers affirmatively, EOIR-42B states that the alien is "required to submit documentation of any such occurrences."  *Id.***⁴**

Because Congress placed the burden of proof on the alien to establish eligibility for cancellation of removal, aliens seeking relief from removal must show that they were not convicted of a state offense that would disqualify them from cancellation of removal, 8 U.S.C. § 1229b(b)(1)(C), and will lose if they cannot do so because the record is inconclusive. The majority of our sister circuits agree with this principle. Most recently, the Eighth Circuit addressed this issue in *Pereida v. Barr*, 916 F.3d 1128 (8th Cir. 2019), and held that where the modified categorical approach applies because a state offense is divisible, and the available documents provide "no indication of the subsection of the statute under which [the alien] was convicted," the alien failed to carry his burden of proving eligibility for discretionary relief, *id.* at 1132–33. In reaching this conclusion, *Pereida* relied on the Third and Tenth Circuits, as well as on its own Eighth Circuit precedent, for the principle that "an inconclusive record is insufficient to satisfy a noncitizen's burden of proving eligibility for discretionary relief." *Id.* at 1133.**⁵**  The Fourth, Sixth, and

---

**³**    https://www.justice.gov/sites/default/files/pages/attachments/ 2015/07/24/eoir42b.pdf.

**⁴** Because the statute makes clear that an alien seeking relief from removal bears the burden of production, 8 U.S.C. § 1229a(c)(4), 8 C.F.R. § 1240.8(d), the majority errs in remanding this matter to the BIA to determine who has the burden of producing *Shepard* documents in a cancellation of removal hearing.  Maj. Op. 30.

**⁵** *See, e.g.*, *Syblis v. Att'y Gen. of U.S.*, 763 F.3d 348, 357 (3d Cir. 2014) ("[A]n inconclusive record of conviction does not satisfy [an alien's] burden of demonstrating eligibility for relief from removal.");

Seventh Circuits also expound this rule.**[6]**   Only the First
Circuit has rejected this approach.   *Sauceda v. Lynch*,
819 F.3d 526, 533–34 (1st Cir. 2016).**[7]**

In sum, this case raises a single question of law:   When an
alien seeks cancellation of removal and it is unclear from the
record whether the alien has a disqualifying criminal
conviction, does the alien win or lose?   The majority opinion
ignores the congressional command in the controlling statute
concerning allocation of the burden of proof in that

---

*Lucio-Rayos v. Sessions*, 875 F.3d 573, 583–84 (10th Cir. 2017) (holding
that the alien bears the burden of proving that a prior conviction was not
a crime involving moral turpitude, which would make the alien ineligible
for cancellation of removal), *cert. denied sub. nom. Lucio-Rayos v.
Whitaker*, 139 S. Ct. 865 (2019).

**[6]** *See, e.g.*, *Salem v. Holder*, 647 F.3d 111, 116–20 (4th Cir. 2011)
("Presentation of an inconclusive record of conviction is insufficient to
meet an alien's burden of demonstrating eligibility . . . ."); *Gutierrez v.
Sessions*, 887 F.3d 770, 779 (6th Cir. 2018) ("[W]here a petitioner for
relief under the INA was convicted under an overbroad and divisible
statute, and the record of conviction is inconclusive as to whether the state
offense matched the generic definition of a federal statute, the petitioner
fails to meet her burden."), *cert. denied sub nom. Gutierrez v. Whitaker*,
139 S. Ct. 863 (2019); *Sanchez v. Holder*, 757 F.3d 712, 720 n.6 (7th Cir.
2014) (agreeing with the Fourth and Tenth Circuit that "if the analysis has
run its course and the answer is still unclear, the alien loses by default").
The majority quibbles that some of these opinions merely "nodded" to this
issue, Maj. Op. 18 n.6, but other circuits likewise read the Third, Fourth,
Fifth, Seventh, and Tenth Circuits as rejecting the majority's side of the
circuit split. *See, e.g.*, *Francisco v. U.S. Att'y Gen.*, 884 F.3d 1120, 1134
n.37 (11th Cir. 2018).

**[7]** While the majority also points to the Second Circuit's opinion in
*Martinez v. Mukasey*, Maj. Op. 17 n. 6, that case is inapposite, because it
did not consider or apply the modified categorical approach. *See* 551 F.3d
113, 118 n.4 (2d Cir. 2008).

circumstance by misreading *Moncrieffe v. Holder*, 569 U.S. 184 (2013), and by conflating a threshold question of fact (does the record demonstrate clearly that the alien does or does not have a disqualifying criminal conviction?) with the resulting question of law.

### III

To determine Marinelarena's eligibility for cancellation of removal, we must consider two different legal frameworks: the Supreme Court's categorical approach for determining whether the elements of a prior state offense are the same as or narrower than those of the disqualifying federal offense, and the INA's statutory and regulatory framework for determining whether an alien qualifies for relief from removal.

### A

The categorical approach is a procedure for determining whether the "state offense is comparable to an offense listed in the INA." *Moncrieffe*, 569 U.S. at 190. "Under this approach we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). Here, the federal aggravated felony is defined to include a "controlled substance offense," meaning a violation

of any law relating to a controlled substance, as listed on one of several federal drug lists.**[8]**

To determine whether Marinelarena was convicted of a state offense that qualifies as a federal controlled substance offense, we begin by looking at the state statute as a whole. If the state statute criminalizes the same or less conduct than the federal controlled substance offense, then the conviction is a categorical match to the disqualifying federal offense. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If the state statute criminalizes more conduct than the federal controlled substance offense, then the state statute is not a categorical match. *Id.* As the Supreme Court has emphasized, this is a legal question. *Mellouli v. Lynch*, 135 S. Ct. 1980, 1987 (2015).

Marinelarena was convicted of violating section 182(a)(1) of the California Penal Code and section 11352 of the California Health and Safety Code. Section 182(a)(1) criminalizes conspiring "[t]o commit any crime." Cal. Penal Code § 182(a)(1). This statute criminalizes more conduct than the federal controlled substances offense, because "conspiracy" applies to any criminal conspiracy, whether or not it relates to a controlled substance offense. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II); *id.* § 1227(a)(2)(B)(i). We have previously determined that section 11352 of the California

---

**[8]** More specifically, a federal controlled substance offense includes the elements of violating (or conspiring to violate) a law relating to a controlled substance, defined in the Controlled Substances Act (CSA), 21 U.S.C. § 802(6), to mean "a drug or other substance, or immediate precursor, included in" one of several federal lists of drugs. A conviction for a state offense that is a categorical match to a federal controlled substance offense would make Marinelarena ineligible for cancellation of removal. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II); *id.* § 1227(a)(2)(B)(i).

Health and Safety Code "criminalizes a broader range of activity and a greater variety of controlled substances than does federal law,"[9] and therefore is not a categorical match for the federal controlled substance offense. *United States v. Martinez-Lopez*, 864 F.3d 1034, 1037–38 (9th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 523 (2017). Accordingly, neither statute, taken as a whole, is a categorical match for the generic federal controlled substance offense.

This conclusion does not the end the inquiry, however, because a state criminal statute may include multiple, alternative versions of the crime. *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009); *see also Moncrieffe*, 569 U.S. at 191 (stating that "our cases have addressed state statutes that contain several different crimes, each described separately"). A state statute that includes such multiple, alternative versions of the crime is referred to as "divisible." *Descamps*, 570 U.S. at 257.

Both state statutes at issue here are divisible. Under section 182, a defendant cannot be convicted for conspiring to commit a crime generally, but only of conspiring to commit a specific state offense. *People v. Horn*, 12 Cal. 3d 290, 297 (1974); *see People v. Beardslee*, 53 Cal. 3d 68, 92 (1991) (explaining that if there are several acts on which separate criminal offenses could be found, the jury must agree on the act forming the basis for the conviction). The jury must agree unanimously on the offense that was the object of

---

[9] Section 11352 of the California Health and Safety Code provides that "every person who transports [for sale], imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport [various listed controlled substances] . . . shall be punished by imprisonment."

the conspiracy.  *Id.*  Section 11352 is likewise divisible.  A jury must agree unanimously on the activity involved and the controlled substance at issue.  *See Martinez-Lopez*, 864 F.3d at 1042–43.  Each activity and each controlled substance constitutes a separate crime.  *Id.* at 1043.  The jury must agree unanimously on whether the defendant sold a controlled substance or transported it for sale and must also agree unanimously on the specific controlled substance.  *See id.*

Some of the alternative versions of the offense criminalized by section 11352 match the federal controlled substance offense in this case.  But some of the versions, such as transporting apomorphine for sale, are not categorical matches to the federal generic offense.[10]  When, as here, a state statute is divisible, and only some of the alternative versions of the offense are categorical matches to the federal generic offense, a court may consider certain types of evidence to determine which version of the offense the alien was actually convicted of.  This step in the procedure is sometimes referred to as the modified categorical approach.

---

[10] For instance, selling heroin, one version of the offense criminalized by section 11352, is a categorical match to a federal controlled substance offense.  *See Mielewczyk v. Holder*, 575 F.3d 992, 996 (9th Cir. 2009) (holding that a conviction for the transportation of heroin "under California Health and Safety Code section 11352(a) is a 'violation of . . . [a] law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21)'").  But transporting apomorphine for sale is not.  *See Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir. 2007) ("[T]he possession of apomorphine is specifically excluded from Schedule II of the CSA, but California's Schedule II specifically includes it." (citation omitted)), *abrogation recognized by Villavicencio v. Sessions*, 904 F.3d 658, 665 (9th Cir. 2018); *compare* Cal. Health & Safety Code § 11055(b)(1)(G) (2002) (classifying apomorphine as a Schedule II drug), *with* 21 U.S.C. § 802(6), *and* 21 C.F.R. §§ 1308.11–.15 (excluding apomorphine as a federally proscribed substance).

*Descamps*, 570 U.S. at 257. It involves two distinct inquiries, one factual and one legal.

First, as a factual matter, the court must consider "a limited class of documents [from the record of a prior conviction] to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). Of course, the crime that a defendant was convicted of is a matter of historical fact. The documents a court may consider in applying the modified categorical approach include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16; *see also Moncrieffe*, 569 U.S. at 190–91. The court must examine these documents to establish which alternative version of the state offense the alien was convicted of.[11]

---

[11] The majority opinion makes a critical error at this first step, *see* Maj. Op. 23, by failing to distinguish between "the *fact* that the defendant had been convicted of crimes falling within certain categories," which a court may consider, with the "facts *underlying* the prior convictions," which a court may not consider. *Taylor v. United States*, 495 U.S. 575, 600–01 (1990) (emphasis added). According to the majority opinion, "[w]hat the [*Shepard*] documents show is . . . a purely legal question" because the *Shepard* documents "either show that the petitioner was convicted of a disqualifying offense under the categorical approach, or they do not." Maj. Op. 23. But obviously, it is a matter of historical fact whether the petitioner was convicted of a specific offense; it is not a purely legal question like the meaning of a statute. And indeed, we often consider the facts in the record to determine the petitioner's actual crime of conviction. We may piece together the clues in the *Shepard* documents, such as putting the defendant's plea to Count 1 (as reported in the minute order) together with the description of Count 1 set out in the indictment, in order to determine the offense of conviction. *See Ruiz-Vidal v. Lynch*, 803 F.3d 1049, 1052–55 (9th Cir. 2015). Similarly, "when a defendant references a specific count during his plea colloquy," a court

If the court can determine the version of the offense, the court then proceeds to the legal inquiry. The court "compare[s] that crime, as the categorical approach commands, with the relevant generic offense" to determine whether they are a categorical match. *Mathis*, 136 S. Ct. at 2249. This second step of the modified categorical approach is identical to the above-described categorical approach: it is a purely legal inquiry that consists of comparing the applicable version of the state offense to the federal generic offense. *See id.* As in the categorical approach, a court does not consider the alien's underlying conduct. *Taylor v. United States*, 495 U.S. 575, 600 (1990) ("Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions."). The question is not what the alien actually did, but under which provision of the state statute the alien was convicted.[12]

---

"can also consider the drug listed in the charging document" to determine the offense of conviction. *Id.*; *see also United States v. Valdavinos-Torres*, 704 F.3d 679, 687–88 (9th Cir. 2012).

[12] The majority holds that, because "[t]he modified categorical approach is merely a 'version of [the categorical] approach,'" Maj. Op. 22 (quoting *Mellouli*, 135 S. Ct. at 1986 n.4), and has been described by the Court as "a tool for implementing the categorical approach," Maj. Op. 24 (emphasis omitted) (quoting *Descamps*, 570 U.S. at 262), the modified categorical approach is a "legal query [that] requires no factual finding and is therefore unaffected by statutory 'burdens of proof.'" Maj. Op. 21. The majority is correct that, at the second step of the categorical approach, the inquiry is purely legal. Its mistake, however, is holding that the first step of the modified categorical approach, in which a court "examine[s] a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction," Maj. Op.

Here, both sections 182(a)(1) and 11352 include multiple, alternative versions of a crime, some of which match the federal controlled substance offense and some of which do not. This means that a court must consider the judicially noticeable documents in the record to answer the historical, factual question: which alternative version of the state offense was Marinelarena convicted of?

The only judicially noticeable document in the record is the criminal complaint charging Marinelarena with (1) conspiracy to sell and transport a controlled substance and (2) selling, transporting, or offering to sell heroin. However, a criminal complaint, without more, is insufficient to establish which state crime a defendant was convicted of. *See United States v. Vidal*, 504 F.3d 1072, 1087 (9th Cir. 2007) (en banc) (holding that the complaint in that case "fails to establish the factual predicate for [the defendant's] plea of guilty"). Despite numerous opportunities to do so, Marinelarena failed to produce any document of conviction that could establish which alternative version of the offense she was convicted of. Here, because the record includes only the criminal complaint, the judicially noticeable documents do not allow a court to make the historical, factual determination as to which version Marinelarena was convicted of.

So where does that leave us? Simply said, we have reached the end of the categorical analysis. Because we don't know the applicable version of the state offense, we cannot compare it with the federal controlled substance offense to

24 (quoting *Descamps*, 570 U.S. at 262), is also a pure question of law and can be conducted without reference to historical, factual records of conviction.

determine whether they match.    Therefore, we cannot determine whether Marinelarena's prior conviction was for a disqualifying or nondisqualifying offense.  And contrary to the majority's view, we may not assume the answer to this factual question; there is no statutory or precedential basis for giving a legal answer to the factual question of what offense Marinelarena was actually convicted of.

B

While this ends our application of the categorical approach, it does not end the analysis.  Rather, it is necessary to consider how this conclusion fits within the legal framework of the INA.

Under the INA, "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief *may* apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply."   8 C.F.R. § 1240.8(d) (emphasis added). Although there are many alternative versions of the offense proscribed by section 11352, the record does not show which version Marinelarena was convicted of.    Though Marinelarena could have been convicted of a state offense that did not disqualify her from relief, the IJ's determination that "one or more of the grounds for mandatory denial of the application for relief *may* apply," *id.* (emphasis added), was supported by substantial evidence.   In short, because Marinelarena bears the burden of proof, and the record is inconclusive, she must lose.  *Greenwich Collieries*, 512 U.S. at 272; *see also Lucio-Rayos*, 875 F.3d at 581.  Thus, the BIA did not err in holding that Marinelarena failed to prove her eligibility for cancellation of removal.

We considered a similar situation in *Young v. Holder*, where the alien "pleaded guilty to a conjunctively phrased indictment that alleged several theories of the crime, any one of which would have sustained a state conviction, but only some of which would constitute an aggravated felony" that would disqualify the alien from being eligible for cancellation of removal. 697 F.3d 976, 988 (9th Cir. 2012) (en banc). Because we could not "tell from the record of conviction whether [the alien] was convicted of selling cocaine, which is an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), or merely of solicitation, which is not, [the alien's] record of conviction is inconclusive." *Id.* Because the record was inconclusive, we held that the alien had not carried his burden of demonstrating eligibility for cancellation of removal. *Id.* at 989. *Young* was correctly decided, and it applies here.[13]

IV

The majority relies almost exclusively on *Moncrieffe* in holding that, contrary to *Young*, we must conclude as a matter

---

[13] *Pereida* adopted an identical approach. *See Pereida*, 916 F.3d 1128. In *Pereida*, the Eighth Circuit considered whether an alien's conviction under a Nebraska statute constituted a crime involving moral turpitude. The court first determined that the Nebraska statute was not categorically a crime involving moral turpitude, because one of the alternative offenses criminalized by the statute did not involve fraud or deception. *Id.* at 1132. But, the Eighth Circuit explained, "[b]ecause this statute is divisible, the inquiry does not end here." *Id.* Applying the modified categorical approach, the Eighth Circuit noted that the available documents provided "no indication of the subsection of the statute under which [the alien] was convicted." *Id.* Because of the court's "inability to discern the particular crime for which [the alien] was convicted" from the alien's inconclusive record, *id.* at 1133, the Eighth Circuit held that the alien had not carried his burden to establish eligibility for cancellation of removal, and therefore denied the petition for relief.

of law that when the evidence does not conclusively establish which alternative version of the state offense Marinelarena was convicted of, we must assume that the alien's conviction does not disqualify the alien from receiving immigration relief.   This reliance is misplaced, however, because *Moncrieffe* was decided on the ground that the state offense was not a categorical match to a federal offense; in *Moncrieffe*, there was no question about which state offense the alien was convicted of.   Indeed, *Moncrieffe* did not involve any use of the modified categorical approach.  Thus, *Moncrieffe* did not address the situation in *Young*, let alone overrule it.

A

In *Moncrieffe*, the alien had been convicted under a Georgia statute for possession of marijuana with intent to distribute.  569 U.S. at 188–89 n.2.  The question in that case was whether this state offense matched the federal generic offense of "drug trafficking crime," which was defined as possession of more than a small amount of marijuana with intent to distribute it for remuneration.  *Id.*[14]

---

[14] Specifically, *Moncrieffe* considered whether the alien had been convicted of an aggravated felony, which includes "a drug trafficking crime" as defined in 18 U.S.C. § 924(c).  569 U.S. at 188.  Under § 924(c), a "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act"; whereas a "felony" is an offense for which the "maximum term of imprisonment authorized" is "more than one year," *see* 18 U.S.C. § 3559(a)(5).  In *Moncrieffe*, the relevant federal generic drug trafficking crime was the federal crime to "possess with intent to . . . distribute . . . a controlled substance," 21 U.S.C. § 841(a)(1), one of which is marijuana, *see id.* § 812(c).  Not every violation of § 841(a) was a drug trafficking crime, however, because § 841(a)(1) was punishable as a misdemeanor if a person violated the statute "by distributing a small amount of marihuana for no remuneration."

The state crime of conviction in *Moncrieffe* made it a crime to "possess, have under [one's] control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." Ga. Code Ann. § 16-13-30(j)(1); *Moncrieffe*, 569 U.S. at 192. Taken as a whole, the statute was not a categorical match for the federal drug trafficking crime, because it was possible to be convicted for possessing a small amount of marijuana for no remuneration. *Moncrieffe*, 569 U.S. at 192–94.

Nor was the state statute divisible in a relevant way. While the state statute listed different acts, it did not create separate versions of the offense based on the amount of marijuana or whether the distribution of marijuana was for remuneration. *See id.* at 194 (noting that the "fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved").

Because the state statute was not divisible, and it criminalized conduct that under federal law "could correspond to either the CSA felony or the CSA misdemeanor," a conviction under that statute "did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA." *Id.* at 194–95. Accordingly, the state statute was overbroad, and "[u]nder the categorical approach," the alien "was not convicted of an aggravated felony." *Id.* at 195.

---

*Moncrieffe*, 569 U.S. at 193–94. Accordingly, *Moncrieffe* determined that the relevant federal drug trafficking crime in that case was possession with intent to distribute marijuana, involving more than "a small amount for no remuneration." *Id.*

Unlike our case, the record in *Moncrieffe* established the exact state offense the alien was convicted of. Because the Court did not need to consider which alternative version of the offense the alien was convicted of, it did not address the issue here: what to do when it is not clear what version of the state offense the alien was convicted of. Therefore, *Moncrieffe* does not control the analysis in our case.[15]

B

A brief digression is necessary here to address a passage and a footnote in *Moncrieffe* which have been the source of great confusion and error. In the section of the opinion addressing the categorical approach generally, *Moncrieffe* notes:

> This categorical approach has a long pedigree in our Nation's immigration law. *See* Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U.L. Rev. 1669, 1688–1702, 1749–1752 (2011) (tracing judicial decisions back to 1913). The reason is that the INA asks what offense the

---

[15] The majority argues that *Moncrieffe* controls this analysis because the categorical and modified categorical approach address the same legal issue, Maj. Op. 24, whether the crime the alien was convicted of matches the generic federal offense (rather than whether the alien *committed* such a crime). This is correct at step two of the modified categorical approach—but only after the court has completed step one, and identified the version of the state offense the alien was convicted of. And *Moncrieffe* has nothing to say about how courts should identify the relevant version of the state offense of conviction when the record of conviction is ambiguous—the question presented in this case.

noncitizen was "convicted" of, 8 U.S.C. § 1227(a)(2)(A)(iii), not what acts he committed. "[C]onviction" is "the relevant statutory hook." *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 580 (2010); *see United States ex rel. Mylius v. Uhl*, 210 F. 860, 862 (2d Cir. 1914).

569 U.S. at 191. In light of the context and citations, it is clear that this section merely reenforces the applicability of the categorical approach in the immigration context. Das recounts the deep roots of the categorical approach in immigration law to show that "[t]he basic structure of the immigration statute—predicating certain immigration penalties on convictions—has remained unchanged since courts first articulated categorical analysis in the early twentieth century." Alina Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U.L. Rev. 1669, 1701 (2011). In enacting the modern day Immigration and Nationality Act, Das argues, "Congress intended a categorical analysis to apply wherever it predicated immigration penalties on convictions." *Id.* at 1698. Citing Das's historical overview, *Moncrieffe* stated that "[t]he reason [why the categorical approach is applied 'in our Nation's immigration law'] is that the INA asks what offense the noncitizen was 'convicted' of, 8 U.S.C. § 1227(a)(2)(A)(iii), not what acts he committed. '[C]onviction' is 'the relevant statutory hook.'" 569 U.S. at 191 (quoting *Carachuri-Rosendo*, 560 U.S. at 580).[16]  But

---

[16] The majority opinion reiterates at great length Das's point that "immigration adjudicators may not go behind the judgment and record of conviction to assess the facts and circumstances of a noncitizen's particular offense," Das, *supra*, at 1696. Maj. Op. 25–27 n.8. This

neither Das's article, nor *Moncrieffe*'s reaffirmation of the categorical approach, addresses who bears the burden of proving the nature of the relevant conviction.

In the footnote immediately after this passage, *Moncrieffe* explains its citation to *Carachuri-Rosendo* by stating that the case "construed a different provision of the INA that concerns cancellation of removal, which also requires determining whether the noncitizen has been '*convicted* of any aggravated felony.' 8 U.S.C. § 1229b(a)(3) (emphasis added). Our analysis is the same in both contexts." *Id.* at 191 n.4. In context, the footnote explains why the cite to *Carachuri-Rosendo* (which involved cancellation of removal) is on point: because the categorical approach applies the same way in removal and relief-from-removal contexts, *Carachuri-Rosendo* supports *Moncrieffe*'s point that the categorical approach applies in the immigration context when the disposition of a petitioner's case depends on the nature of a prior conviction.

This interpretation is confirmed by a brief review of *Carachuri-Rosendo*. In *Carachuri-Rosendo*, an alien had committed two misdemeanor drug possession offenses in Texas. 560 U.S. at 566. As in our case, the alien conceded removability, but sought cancellation of removal. *Id.* The question for the Court was whether the alien's state crimes of conviction constituted an "aggravated felony" for purposes of immigration law, which would make him ineligible for cancellation of removal. *Id.*

---

assertion, while correct, sheds no light on the question relevant here: who bears the burden of proving what the petitioner was convicted of.

*Carachuri-Rosendo* applied a categorical approach to this problem. It first determined that the federal generic offense was simple possession of a controlled substance after a prior conviction (i.e., "recidivist simple possession") pursuant to 21 U.S.C. § 844(a), which was punishable as a felony. *Id.* at 567–68. Turning to the state crime of conviction, *Carachuri-Rosendo* determined that the alien had been convicted of a simple possession offense, not recidivist simple possession. *Id.* at 570. Because the state offense of conviction was not a categorical match to the federal generic offense, the conviction did not preclude cancellation of removal. *Id.* The Court rejected the government's argument that the alien was ineligible for cancellation of removal because the alien could have been convicted in state court of recidivist simple possession (due to a prior possession conviction). *Id.* As the Court made clear, the INA requires courts to consider only the conviction itself, not "what might have or could have been charged." *Id.* at 576.

Accordingly, *Carachuri-Rosendo* stands only for the proposition that where the state offense of conviction does not match the federal generic offense, the alien has not been convicted of a disqualifying federal generic offense. It does not address the question raised in this case, which is how to determine which version of the state offense the alien was actually convicted of. Moreover, there is no reason to think *Moncrieffe* cited *Carachuri-Rosendo* to make a point about the burden of proof in immigration cases, an issue raised neither in *Carachuri-Rosendo* nor *Moncrieffe*. *Moncrieffe*'s footnote 4 is best understood as merely further bolstering the

point that the categorical approach applies in immigration cases.[17]

C

*Moncrieffe* does not address the situation we addressed in *Young*, where the state statute of conviction was divisible, so that some of the versions of the state offense categorically qualified as a federal generic offense and others did not. In that situation, a court may consider evidence in the record to determine which version of the state crime the alien was convicted of. This question of what offense the alien was actually convicted of is a historical factual issue, not a legal issue.

In holding otherwise, the majority confuses the categorical approach in *Moncrieffe* with the historical factual question of what state statute the alien was convicted of. Thus, the majority states that *Moncrieffe*'s "mode of analysis is clearly irreconcilable with *Young*," Maj. Op. 19, because *Moncrieffe* held that "[i]f the record does *not* conclusively

---

[17] The majority interprets footnote 4 to mean that whenever there is ambiguity regarding the nature of the state offense, that offense is deemed not disqualifying, regardless whether the government is seeking removal or the alien is seeking relief from removal. Otherwise, the majority argues, there would be "an exceedingly odd result" because it is possible that the government could not prove the alien was removable, while at the same time the alien could not prove eligibility for asylum or cancellation of removal. Maj. Op. 20. This "odd" result, however, is compelled by the INA and its shifting burden of proof: the government bears the burden of proving "by clear and convincing evidence that the respondent is deportable as charged," 8 C.F.R. § 1240.8(a), while the alien "shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion," *id.* at § 1240.8(d); *see also* 8 U.S.C. § 1229a(c)(4).

establish that the noncitizen was convicted of the elements of the generic offense, then she was *not* convicted of the offense for purposes of the immigration statutes," Maj. Op. 20. But a reader will search in vain for any such ruling in *Moncrieffe*. *Moncrieffe* merely applied the familiar rule that a court may consider only the offense of conviction, not the facts underlying the conviction, in determining whether an alien was convicted of a disqualifying offense for purposes of the immigration statutes. 569 U.S. at 205–06. Because in *Moncrieffe* the alien was convicted of a state offense that was not divisible, the Court had no occasion to address a case where the record did not establish which *version* of a state offense the alien was convicted of.

In short, the majority misreads *Moncrieffe* by confusing a legal question (whether there is a categorical match) with a factual question (what was the alien convicted of in state court). When a state statute includes many alternative versions of an offense, a court must determine the historical, factual question of what the alien was convicted of based on the evidence in the record. Only then can we ask the legal question: whether that offense is a match for a disqualifying federal offense.

V

By confusing the legal and factual issues, the majority creates the new rule that, when an alien is convicted under a state statute that includes multiple, alternative versions of the offense, and there is insufficient evidence in the record to prove what version the alien was convicted of, we must assume as a matter of law that the alien was convicted of a version of the state offense that does not match the federal generic offense. This rule finds no support whatsoever in

*Moncrieffe*.   The majority opinion's rule is also directly
contrary to *Young*, which was not overruled by *Moncrieffe*
because *Young* and *Moncrieffe* address entirely distinct
issues.   Moreover, the majority opinion conflicts with the
majority of our sister circuits, and instead joins the single
circuit that adopted the wrong approach.  Most important, the
new rule is contrary to the INA in that it overrides the statute
and regulation putting the burden on the alien "to establish
that the alien . . . satisfies the applicable eligibility
requirements" for various forms of relief.   8 U.S.C.
§ 1229a(c)(4)(A).  And because the INA imposes the burden
of production on the alien, 8 U.S.C. § 1229a(c)(4), 8 C.F.R.
§ 1240.8(d), the majority's rule that the alien is entitled to
relief whenever the record is ambiguous will encourage aliens
to withhold and conceal evidence.[18]

Under the INA and our caselaw, if the state statute of
conviction is divisible, and the alien was convicted of a
specific alternative version of a state offense, then the alien

---

[18] In this case, for instance, Marinelarena has declined to produce
additional *Shepard* documents (despite urgings by the IJ to do so).  Nor
has she stated that her offense of conviction is *not* disqualifying.  A fair
inference, therefore, is that she is relying on a strategic absence of
documentation to obtain immigration benefits. The majority provides no
support for its claim that in practice the government can find and produce
an alien's convictions to avoid abuses of the immigration system, Maj.
Op. 29 n.10.  In this very case, the government has been unable to produce
additional *Shepard* documents.  Given the government's backlog of over
5 million claims for immigration benefits, *see* U.S. Citizenship and
Immigration Servs., Response to Representative Garcia's February 12,
2019 Letter at 3 (April 2019), and its systemic problems, *see* U.S.
Citizenship & Immigration Servs., Annual Report 2018 at 19 (June 28,
2018) (noting substantial obstacles in implementing its immigration
system database), enforcing the regulation's burden of production is
critical for avoiding abuse and fraud.

seeking relief from removal has the burden of proving that the conviction does not disqualify the alien from that relief. Because the majority holds to the contrary, I dissent.